

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-19-00220-CV

The **CITY** of San Antonio,
Appellant

v.

Armando D. **RIOJAS**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CI13534
Honorable David A. Canales, Judge Presiding

Opinion by:     Beth Watkins, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:        Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: February 26, 2020

The majority rejects the City's arguments that Riojas's injuries did not arise from Officer Tristan's operation or use of a motor-driven vehicle and his activation of his emergency lights was too attenuated from the accident resulting in Riojas's injuries. I respectfully dissent because the evidence establishes that Riojas's injuries arose from actions taken by other drivers that occurred prior to Officer Tristan's activating his emergency lights, and the activation of the lights was therefore too attenuated from the accident.

The Texas Tort Claims Act waives the City's immunity for injuries that arise from the operation or use of a motor-driven vehicle. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A).

"The statute itself does not define 'arises from.'" *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 926, 928 (Tex. 2015) (per curiam). The Texas Supreme Court has defined arising from as requiring "a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle." *PHI, Inc. v. Tex. Juvenile Justice Dep't*, No. 18-0099, 2019 WL 1873431, at *3 (Tex. Apr. 26, 2019) (internal quotation marks omitted). Such a nexus "requires more than mere involvement of property." *Id.* (internal quotation marks omitted). Stated differently, the operation or use must actually cause the injury which is not shown if the operation or use does no more than furnish the condition that makes the injury possible. *Ryder Integrated Logistics, Inc.*, 453 S.W.3d at 929. Finally, "[w]hen an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." *Id.* at 929-30 (internal quotation marks omitted).

The majority misplaces its focus on the disposition in *Ryder* and seems to overlook the distinctions in the evidence. In *Ryder*, Deputy Sheriff Randy Thumann stopped Ralph Molina for a traffic violation at 3:00 a.m. *Id.* at 926. While parked on the shoulder of the highway, Molina's eighteen-wheeler was clipped by a Ryder eighteen-wheeler driven by Robert Solis, Sr., whose truck overturned and ignited. *Id.* Solis did not survive. *Id.* After Molina sued Ryder and Solis's estate, Ryder "filed [a] third-party claim against Fayette County, alleging that [Deputy] Thumann's negligence caused the accident." *Id.*

The County filed a plea to the jurisdiction challenging the allegations in the pleading that Molina's alleged harm arose from Deputy Thumann's operation or use of a motor vehicle. *Id.* at 926-27. "The relevant facts [were] largely undisputed." *Id.* at 926. "Molina parked his eighteen-wheeler on the shoulder just right of the eastbound lanes, and [Deputy] Thumann pulled up behind

him." *Id*. When Molina's truck began rolling backward, Deputy Thumann "repositioned his vehicle" by driving "up the grassy berm to his right" and then turning "his cruiser so that it faced eastbound traffic" while remaining "in the grass to the right of the shoulder." *Id*. "The cruiser's headlights and high-beam spotlight were illuminated as were its emergency lights." *Id*. Within seconds of Deputy Thumann turning his vehicle to face oncoming traffic and while Deputy Thumann "was still repositioning it," Solis's truck clipped Molina's truck. The petition specifically alleged "Solis was blinded or distracted by the cruiser's headlights," and the County conceded the headlights "were directed at oncoming traffic." *Id*.

The Texas Supreme Court held Ryder sufficiently alleged cause in fact by alleging the lights of the deputy's cruiser were directed toward oncoming traffic causing Solis's errant driving. *Id*. at 929. The court further held Ryder sufficiently alleged foreseeability by alleging "a reasonable peace officer could have foreseen that driving westbound near an eastbound shoulder at night—with headlights and emergency lights illuminated—might confuse drivers, disrupt traffic, and lead to a collision much like the one that ultimately occurred." *Id*. Thus, the pleadings in *Ryder* alleged the officer maneuvered the cruiser's lights, directing them toward oncoming traffic, and, by doing so, he caused Solis's errant driving. Here, on the other hand, the video records Vela stating that she did not slow down in response to Officer Tristan's lights. Instead, she slowed her vehicle because the vehicle in front of her had slowed. Similarly, Riojas testified in his deposition that he braked in response to Vela's braking, and he did not see Officer Tristan's vehicle before the accident.

The majority relies on statements made by two witnesses at the scene stating they believed Officer Tristan's activation of his lights "scared" other drivers. The majority acknowledges the witnesses' opinions would be speculative if they were based on guesswork or conjecture. *See*

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam) (noting a finding of causation "cannot be supported by mere conjecture, guess, or speculation"). The majority insists, however, the witnesses' opinions were not speculative because: (1) the witnesses had personal knowledge of the events from which their opinions were drawn; and (2) the opinions were rationally based on that knowledge. *See Dodson v. Munoz*, No. 04-17-00409-CV, 2018 WL 3747748, at *6 (Tex. App.—San Antonio Aug. 8, 2018, no pet.) (mem. op.). And, the majority concludes the opinions were rationally based on the witnesses' personal knowledge because a reasonable person could draw the same opinion under the circumstances. *See id*. I disagree.

First, Riojas and Vela were traveling in the far left lane of traffic, and they stated they did not see Officer Tristan's lights. The video shows the vehicles in the middle and right lanes were the ones that suddenly braked as Olvedo and the other driver crossed those lanes.[1] Second, the evidence does not establish in which lanes of traffic the two witnesses were traveling. Finally, the evidence does, however, establish the witnesses were not aware of the actions taken by Olvedo and the other driver that caused drivers to suddenly brake and traffic to slow before Officer Tristan activated his lights. Officer Tristan is heard on the video telling the two witnesses about Olvedo's and the other driver's actions. In response, one of the witnesses states Officer Tristan better have chased down Olvedo, and Officer Tristan informed him Olvedo had indeed been stopped. The witness then tells Officer Tristan that what he did "scared" Vela and she hit her brakes causing Riojas to lose control. However, this statement is nothing more than an assumption and speculation and is not reasonable given that Vela stated she never saw Officer Tristan's lights.

---

[1] Although the majority believes the video shows "traffic briefly stopped moving altogether" in all three lanes of traffic "after Officer Tristan pulled over to the right side of the road," this finding ignores the fact that the video captures thirty seconds of activity prior to Officer Tristan's activation of his lights while he is still driving. And, given this timing, I disagree the video shows the traffic in the far left lane was affected by anything other than the actions of Olvedo and the other driver.

Furthermore, although the witness was present at the scene, he did not have personal knowledge of the events that led to the initial braking and slowing of traffic because he did not personally observe those events.

The majority also asserts "Riojas's wreck occurred contemporaneously or nearly contemporaneously with Officer Tristan's activation of his lights." No evidence in the record supports this leap. And, Riojas's and Vela's statements that they did not see Officer Tristan's lights is evidence contrary to the majority's assertion. Although the majority relies on the witnesses' opinions that Officer Tristan's activation of his lights "scared" the other drivers, this is no evidence that his lights "scared" Vela or the driver of the car in front of her, especially given Vela's testimony that she did not even see Officer Tristan's lights.

Finally, the majority relies on a provision in the Texas Transportation Code regarding actions drivers must take in response to the activation of an officer's emergency lights. Again, however, the evidence shows drivers were braking and traffic was slowing ***before*** Officer Tristan activated his lights. And, Riojas and Vela never saw Officer Tristan's lights, so they were not taking any actions required by the Texas Transportation Code in response to those lights.

The driver who slowed in front of Vela did not ultimately stop, so no evidence was presented regarding the reason that driver slowed down which was the only reason Vela braked. The video clearly shows drivers braked and traffic slowed and stopped in the middle and right lanes due to the actions of Olvedo and the other driver who crossed those lanes of traffic. Therefore, the video clearly establishes traffic was already slowing and braking in response to the actions of those drivers before Officer Tristan activated his emergency lights. We know this is true because the video captures thirty seconds of activity prior to the activation of the emergency lights, and the vehicles are braking in the middle and right lanes of the highway before the thirty-

second mark of the video. For these reasons, Officer Tristan activating his lights in the far right exit lane was geographically and temporally attenuated from any slowing of the traffic in the far left lane. As a result, the evidence does not raise a fact issue as to causation because there is no evidence that Riojas's injuries would not have occurred if Officer Tristan had not activated his emergency lights. Instead, the evidence established drivers had already begun to brake and traffic had begun to slow before Officer Tristan activated his lights.

For the foregoing reasons, I believe the trial court erred in denying the plea to the jurisdiction. Because the majority holds to the contrary, I respectfully dissent.

Luz Elena D. Chapa, Justice